**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**BOBBY L. MAGWOOD,**

**Plaintiff,**

**vs.**                                                        **Case No. 4:14cv314-MW/CAS**

**OFFICER BEEM,**
**et al.,**

**Defendants.**

_____/


<u>**REPORT AND RECOMMENDATION**</u>

Seventeen of the named Defendants filed a motion to dismiss Plaintiff's

complaint, doc. 24, and adopted thereafter by Defendant Suttles.[1]  Defendants' motion

for leave to file excess pages, doc. 26, and motion to stay discovery, doc. 25, were

granted.  Doc. 28.  Plaintiff was directed to file his response in opposition to the motion

to dismiss, doc. 28, and his response was timely filed.  Doc. 30.

**Procedural Information**

This case was removed from state court to federal court, doc. 1, and additional

service efforts were made on those Defendants who were unserved at the time of

---

[1] The motion to dismiss was filed by Defendants Crews, Comerford, Courtney,
Nichols, Jackson, Lee, Enfinger (listed by Plaintiff as Infinger), Beem, Bence, Covan,
Thornbill, Burt, Carr, Denmon, Johnson, Moore, and Sims.  Doc. 28 at 1.  Plaintiff
voluntarily dismissed his claim against Defendant Dubose.  Doc. 8 at 5; doc. 11 at 2.

removal.  Doc. 7.  Plaintiff was required to provide clarification of the identities of several

Defendants, and service of process was eventually carried out on all but two

Defendants.  *See* docs. 13, 16, 17, 22, 23, and 27.  Neither Defendant Coston nor

Defendant Hawkins has been served in this case.  *See* docs. 7, 13, and 22.  The

Department of Corrections was requested to provide assistance with locating Defendant

Hawkins.  Doc. 7.  The Department advised that Defendant Hawkins had left the State

of Florida, and had not left a forwarding address, but a confidential address was

provided to the United States Marshals Service where service could again be

attempted.  Doc. 16.  Plaintiff was directed to use discovery to attempt to locate

Defendant Hawkins and advised that it was his responsibility to file a motion for

additional service efforts to be made on that Defendant if he obtained an address.  Doc.

17.  Nothing has been filed concerning Defendant Hawkins.

As for Defendant Coston, Plaintiff was permitted to use discovery methods

<u>limited</u> solely to determining the full or correct name for Defendant Coston, who was

identified by Plaintiff as an Institutional Inspector at Santa Rosa Correctional Institute,

and obtaining an address where that Defendant may be served.  Doc. 28.  That Order

was entered in late August 2014, but Plaintiff has not filed any document since then

concerning the identity for Defendant Coston.  Accordingly, Plaintiff's claims against

Defendants Coston and Hawkins should be dismissed because those Defendants have

not been served with process as required by FED. R. CIV. P. 4(m), and 12(b)(5).

Additionally, Defendant Michael D. Crews resigned as Secretary of the Florida

Department of Corrections in December 2014.  On January 5, 2015, Julie Jones was

appointed Secretary of the Department.  Julie Jones should be automatically substituted

for Defendant Crews pursuant to Fed. R. Civ. P. 25(d), and the Clerk of Court is directed to correct the docket to reflect this change.

**Complaint, Doc. 8**

After remand, Plaintiff's complaint was separately filed from the other state court pleadings, doc. 7, and is document 8. Plaintiff seeks declaratory and injunctive relief, doc. 8 at 1, as well as compensatory damages of $25,000.00 against each Defendant and punitive damages of $50,000.00. Doc. 8 at 17.

Plaintiff's complaint concerns a series of events which took place at Santa Rosa Correctional Institution between February and July of 2013. In January of 2013, Plaintiff completed his required time (six months) on Close Management,[2] Level I, and he was downgraded to Level II. Doc. 7 at ¶27. Plaintiff asserts that change caused "security" to initiate a "mission of retaliation" and return him to Level I. *Id.*

Plaintiff contends that on February 1, 2013, Defendant Bence took two "personal laundry bags from Plaintiff, taking away all means of cleaning his bedlinens and clothes, forcing him to live in unsanitary conditions until May 6, 2013. Doc. 8 at ¶28. During that time, Bence allegedly "harassed and retaliated against Plaintiff for filing grievances" by taking the laundry bags, a dictionary, a book, and "physically abusing Plaintiff several times while putting on and taking off the handcuffs while escorting Plaintiff back and [forth] to the showers." ¶29.

---

[2] Close management involves the segregation of an inmate either for reasons of security, prison management, "or where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Doc. 24 at 1, n.1.

Between March 16 - 19, 2013, Plaintiff claims he was denied eleven straight meals by Defendant Beem.  From March 27-30, 2013, Beem "forced Plaintiff to live in a contaminated cell where the commode had backed up and flooded the cell . . . ."  ¶30.  Plaintiff's cellmate was moved to another cell, and Beem turned off the water to the cell, but did not move Plaintiff and "made no effort to decontaminate the cell."  *Id.*

On May 16, 2013, Defendant Moore read Plaintiff's legal mail and tried to throw Plaintiff's mail in the toilet.  ¶32.  Moore threatened Plaintiff "with having a big X on his back."  *Id.*

On May 21, 2013, Defendant Sims refused to feed Plaintiff his breakfast meal.  ¶33.  Later that day, Defendants Moore and Carr threatened Plaintiff with "more acts of retaliations."  *Id.*  On May 22, 2013, Defendant Sims threw Plaintiff's breakfast tray on the floor, and called Plaintiff a racially derogative name.  ¶34.

Plaintiff alleges that after he unsuccessfully attempted to contact Defendants Comerford (the Warden) and Coston (the Inspector), and received no response, he went on a hunger strike on May 23, 2013.  ¶35.

Plaintiff alleges that on May 25, 2013, Defendants Covan and Sims, along with two other unidentified officers, took all of Plaintiff's property out of his locker, put it on the bed and wet it down with water from the commode.  ¶36.  Plaintiff contends they also wet down his mattress, and destroyed all of Plaintiff's "important personal papers and some important legal papers" as well.  *Id.*  Plaintiff contends his soap, soap dish, and deodorant were destroyed, and his prayer beads and 30 stamps were taken.  *Id.*  When Defendant Sims returned to serve Plaintiff his breakfast, he threw the "food tray in Plaintiff's cell."  *Id.*

Later that day, Defendant Carr was handcuffing Plaintiff and he allegedly tried to "break Plaintiff's fingers and wrists by twisting his fingers and bending his wrists back against the cuffs."  ¶37.[3]  Defendant Carr threatened Plaintiff, again using racial slurs and verbal sexual harassment.  ¶38.  Defendant Moore laughed at Carr's threats.  *Id.*  Plaintiff alleged that he filed a grievance about the sexual harassment, and Defendant Infinger responded by telling Plaintiff that the incident was referred to the institutional inspector, Defendant Coston.  *Id.*  Plaintiff contends that there has been no response.

Later that day, May 25, 2013, when Defendant Carr served Plaintiff his noon meal, Carr "threw the cup of juice in" Plaintiff's cell.  ¶39.  Defendant Suttles "put Plaintiff on strip for four (4) days" with nothing but his boxer shorts and the steel bunk bed to sleep on, presumably meaning the mattress was removed.  *Id.*  Defendant Moore allegedly falsified a disciplinary report for the "incident," and Defendant Carr wrote another "bogus" disciplinary report on Plaintiff when he was "trying to save some of [his] property."  *Id.*  Plaintiff does not allege what he was charged with in the disciplinary reports nor indicate the results of the disciplinary hearing(s).

While Plaintiff was being escorted from the shower back to his cell, Defendant Moore again verbally threatened Plaintiff.  ¶41.  Defendant Moore tried to push Plaintiff into the sharp corner of the steel bunk as they were going into the cell.  *Id.*  He also "tried to break Plaintiff's fingers and wrists by bending and twisting them back against the cuffs."  *Id.*

---

[3] Plaintiff alleges this happened a second time, but does not clearly identify when the second incident with Defendant Carr occured.  ¶40.

Plaintiff complains that when he tried to get help from the medical station for pain and numbness in his left hand and arm, Defendant Hawkins (a nurse) refused to evaluate Plaintiff and said he would note in Plaintiff's medical file "that nothing was wrong with Plaintiff."  ¶42.

Plaintiff alleged that when he was "placed on strip," Defendants Carr and Moore inventoried Plaintiff's property.  ¶44.  He claims that they destroyed "every big legal envelop" and mixed up his papers.  *Id.*  Plaintiff further contends that some pages of legal work were missing when it was returned to him.  *Id.*

On May 26, 2013, Plaintiff contends that Defendants Sims and Covan directed the inmate orderlies who were serving breakfast to "throw the food tray and juice cups in Plaintiff's cell."  ¶45.  Plaintiff also claims that when he went to sick call on May 31, 2013, Defendant Johnson went into Plaintiff's cell and destroyed more legal documents. ¶46.  Defendant Johnson "hung a racial symbol from Plaintiff's top bunk in the cell representing a klansman hanging a black man."  *Id.*  Plaintiff alleges there was no response made to his informal grievances filed about the actions of Defendants Carr, Moore, Johnson, or Covan.  *Id.*

On June 3, 2013, Plaintiff claims Officer Brown (not a named Defendant) threw Plaintiff's food tray into his cell when being served the dinner meal.  ¶48.  On June 8, 2013, Defendant Carr was beating and kicking on Plaintiff's cell door for approximately two minutes, "then sent the shift Lieutenant to Plaintiff's cell in an attempt to get him gassed."  *Id.*  Plaintiff claimed that later that day, Defendants Carr and Moore "physically abused Plaintiff to and from a medical callout."  *Id.*

On June 18, 2013, Defendant Infinger threatened Plaintiff "with retaliation for writing grievances" against Defendants Johnson, Carr, and Moore.  ¶49.  Plaintiff claims the threats were carried out on June 20th when "Plaintiff was illegally gassed" by Defendants Infinger and Lee.  ¶50.  Plaintiff alleges Defendant Infinger told Plaintiff the reason he was being gassed was because Infinger "was tired of Plaintiff writing stupid grievances and being on a hungry [sic] strike."  *Id.*

Plaintiff contends that when he was gassed, the back window to his cell was taped up before chemical agents were administered.  ¶51.  Plaintiff states that was "the only source of air in the cell," and that doing so violated Departmental rules.  *Id.*  He further claims three large cans of chemical agents were administered, also a violation of the rules.  *Id.*  He claims the use of chemical agents was not videotaped as required, and he was kept in the contaminated cell[4] for over 30 minutes before being taken to the shower, in violation of the rules.  *Id.*

Plaintiff alleged that after he was gassed, he "was placed on strip a second time and his property was inventoried" by Defendants Denmon and Burt.  ¶56.  Plaintiff states that after he received his property back, he was missing a sweatshirt, blue shorts, a white top deodorant, most of a deck of playing cards, a dictionary, a hair brush.  *Id.*  Plaintiff also said that "his toothbrush holder was busted up."  *Id.*

To justify the use of chemical agents on June 20, 2013, Plaintiff alleges Defendant Thornhill wrote Plaintiff a "bogus" disciplinary report alleging that Plaintiff was

---

[4] Plaintiff alleges Defendant Nichols had terminated his high blood pressure medication and asthma treatment, "thereby eliminating the medical conditions that would be exacerbated by the use of chemical agents or would make the use of chemical agents dangerous to Plaintiff's health be known . . . ."  ¶52.

creating a disturbance by kicking his cell door and yelling obscenities.  ¶54.  Plaintiff

contends, however, that Defendant Thornhill "never came to cell C3101 at any time on

June 20, 2013."  *Id.*

On June 25, 2013, Plaintiff alleged that he filed a grievance about the actions of

Defendants Lee and Infinger.  ¶55.  Plaintiff was informed by the warden that the

incident was referred to the institutional inspector, Defendant Coston.  *Id.*

Two days later, on June 27, 2013, Plaintiff alleges that Defendants Infinger and

Jackson gassed him again in retaliation for his grievance.  ¶55.  Plaintiff was placed "on

strip for the third time."  *Id.*  When Plaintiff filed another grievance on July 3, 2013, about

the use of chemical agents, he alleges that it he received the "same identical response

as that of the first gassing."  *Id.*  Defendant Suttles wrote Plaintiff another "bogus"

disciplinary report "alleging that once again Plaintiff was yelling and kicking on the cell

door."  *Id.*

Plaintiff complains that after he filed a grievance against Defendants Denmon

and Burt concerning his missing property, Defendant Denmon had the inmate orderly

who was serving the noon meal "throw the food tray" in Plaintiff's cell.  ¶57.  Plaintiff

contends Defendant Thornhill witnessed the incident, but permitted Defendant Denmon

to falsify a disciplinary report against Plaintiff.  *Id.*  On June 30, 2013, July 3, 2013, and

again on July 4, 2013, Defendant Burt "threw loaf meals in" Plaintiff's cell.  *Id.*  Plaintiff

asserts that he was still on a hunger strike during that time.

Plaintiff alleges that on June 27, 2013, after he was gassed for the second time,

he was placed on strip for the third time.  ¶58.  Plaintiff asserts that Defendant Dubose

inventoried his property.  *Id.*  When Plaintiff received his property back, he claims he

was missing: his shower slides, 29 regular envelopes, and 12 greeting cards.  *Id.*

Plaintiff claims that the only personal property he had left was "a busted up soap dish

and busted up toothbrush holder."  *Id.*

Plaintiff alleges a multitude of claims pursuant to 42 U.S.C. § 1983 for retaliation

in violation of the First Amendment, racial discrimination and due process claims in

violation of the Fourteenth Amendment, claims for cruel and unusual punishment,

unlawful use of chemical agents, and deliberate indifference to his care and safety in

violation of the Eighth Amendment.  ¶62.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV.

P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the

plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the

standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129

S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127

S.Ct. 1955).[5]  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at 556); *see also*

---

[5] The complaint's allegations must be accepted as true when ruling on a motion
to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert.
denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's
disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965, *quoting*
Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility

standard" is not the same as a "probability requirement," and "asks for more than a

sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949

(quoting Twombly, 550 at 556). A complaint that "pleads facts that are 'merely

consistent with' a defendant's liability," falls "short of the line between possibility and

plausibility." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's

command to simply give fair notice to the defendant of the plaintiff's claim and the

grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992,

998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil

actions, with limited exceptions."). Pro se complaints are held to less stringent

standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967

(11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30

L.Ed.2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the

claim and the grounds upon which it rests so that a "largely groundless claim" does not

proceed through discovery and "take up the time of a number of other people . . . ."

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577

(2005) (quoted in Twombly, 127 S.Ct. at 1966). The requirements of Rule 8 do "not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949. A complaint does not need detailed

factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678, 129

S.Ct. at 1949. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.' "  *Id.* (quoting Twombly,  550 U.S., at 555, 127 S.Ct. 1955).

Courts should take a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6).  Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.  The first consideration is whether the complaint presents "well-pleaded factual allegations"which are entitled to a presumption of truth or, whether, the complaint merely asserts "legal conclusions" which "are not entitled to the assumption of truth."  *Id.* at 679, 129 S.Ct. at 1950.  If the complaint contains factual allegations that are well pled, the second step is to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief."  *Id.*  If so, a motion to dismiss should be denied.  *Id.*, at 680, 129 S.Ct. at 1950-51 (citations omitted).

## 1.    Retaliation Claim

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); *see also* Pate v. Peel, 256 F.Supp.2d 1326, 1336 (N.D. Fla. 2003); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir.1997); Wright v. Newsome, 795 F.2d 964 968 (11th Cir. 1986); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986).  "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248).

To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of

the claim is that the prisoner is being retaliated against for exercising his right to free speech.  Farrow, 320 F.3d at 1248.  However, a viable complaint must allege that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."  Mosley, 532 F.3d at 1276.

Defendants first seek dismissal of Plaintiff's retaliation claim in which Plaintiff's complaint begins with the assertion that when his classification officer downgraded Plaintiff's status to Close Management II, security went on a "mission of retaliation" to return Plaintiff to Close Management I.  Doc. 24 at 9-10 (citing doc. 8 at 6).  The basis for dismissal is that this claim for retaliation is not causally connected to any action taken by Plaintiff but to a decision by the classification officer.  Doc. 24 at 10.

Notwithstanding Defendants' argument, the assertion made by Plaintiff that a campaign for retaliation was initiated is construed as the basis to show a conspiracy to retaliate against him.  Construed as a conspiracy claim, it is insufficient.  First, the "intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.  McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc) (quoted in Grider v. City of Auburn, 618 F.3d 1240, 1261 (11th Cir. 2010)).  The doctrine provides that a "corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  McAndrew, 206 F.3d at 1036 (quoted in Grider, 618 F.3d

at 1261).  The doctrine has been extended beyond the world of corporations, and

applies to public entities such as a city and its employees, Denney v. City of Albany,

247 F.3d 1172, 1190-91 (11th Cir. 2001) (holding that where the "only two conspirators

identified" were both City employees, the intracorporate conspiracy doctrine barred

plaintiffs' § 1985 conspiracy claims) (citing Dickerson v. Alachua County Comm'n, 200

F.3d 761, 768 (11th Cir.  2000)), and government entities.  Rehberg v. Paulk, 611 F.3d

828, 854 (11th Cir. 2010) (stating that "intracorporate conspiracy doctrine bars

conspiracy claims against corporate or government actors accused of conspiring

together within an organization").  It has also been applied to claims alleging that

"employees of the FDOC" conspired to violated an inmate's constitutional rights "in

retaliation for his filing grievances . . . ."  Claudio v. Crews, No. 5:13cv345-MP/EMT,

2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014) (dismissing conspiracy claim brought

in § 1983 action); *see also* Briggs v. Hancock, No. 3:13-CV-212-J-39MCR, 2014 WL

5378527, at *9 (M.D. Fla. Oct. 21, 2014) (same).  Here, there are no claims of

involvement by persons not employed within the Florida Department of Corrections and,

thus, Plaintiff's conspiracy claims against the Defendants are barred by the

intracorporate conspiracy doctrine.

Second, to state a claim for conspiracy, Plaintiff must allege that the Defendants

"reached an understanding" to deny Plaintiff his rights.  Grider, 618 F.3d at 1260.

Plaintiff provides no factual allegations which demonstrate or plead that that Defendants

"reached an understanding" to violate Plaintiff's rights.  Bailey v. Bd. of Cnty. Comm'rs

of Alachua Cnty., 956 F.2d 1112, 1122 (11th Cir.1992).  To the degree Plaintiff's

complaint seeks to allege a conspiracy to retaliate claim, the motion to dismiss, doc. 24, should be granted.

In addition, Plaintiff alleged a retaliation claim against Defendant Bence which arose from the February 1, 2013, incident.  "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248).  To state a claim, a prisoner must allege three elements:  "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."  Mosley, 532 F.3d at 1276.

Plaintiff's retaliation claim against Defendant Bence is insufficient because Plaintiff only presented a conclusory allegation that Defendant Bence took Plaintiff's property and abused him out of retaliation. There are no factual allegations which reveal how Defendant Bence knew of any grievance filed by Plaintiff or which provide a causal connection between any grievances filed by Plaintiff and the loss of property or alleged "abuse."  Moreover, Plaintiff's claim that Defendant Bence was "physically abusing Plaintiff several times while putting on and taking off the handcuffs" is a vague

conclusion, not well plead, and not a proper factual allegation.  The claim against Defendant Bence should be dismissed for failure to state a claim.

Plaintiff also alleged a claim for retaliation against Defendants Infinger, Lee, and Jackson.  Plaintiff claimed that he was directly threatened with retaliation for writing grievances.  Doc. 8 at ¶49.  Plaintiff alleges that he suffered adverse action when he "was illegally gassed" by Defendants Infinger and Lee on June 20, 2013, *id.* at ¶50, and again on June 27, 2013, when subjected to additional chemical agents by Defendants Infinger and Jackson.  *Id.* at ¶55.

The problem with those retaliation claims for Plaintiff is that he was given allegedly "bogus" disciplinary reports following the June 20th use of chemical agents, ¶54, and the June 27th use of chemical agents.  *Id.* at ¶55.  Plaintiff was found guilty of those disciplinary charges after a hearing.[6]  *See* doc. 24-3 at 3; doc. 24-4 at 3.  Plaintiff's grievances seeking to overturn the disciplinary reports were to no avail.  *Id.* at ¶54-55.

"[A]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process."  O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011).  That is so because the causal connection between the Plaintiff's protected activity and the adverse action is severed.  The Eleventh Circuit explained the reasoning in O'Bryant:

---

[6] The disciplinary report hearing information logs for both disciplinary reports reveal that Plaintiff did not enter a plea, refused to appear at the hearing, refused to give a statement, and refused to call witnesses or sign the forms.  Doc. 24-3 at 3; Doc. 24-4 at 3.  He was found guilty of taking part in a minor disturbance as charged in both disciplinary reports.  *Id.*

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report.  Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. . . .  To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance.  Because he was guilty of the disciplinary charges resulting in the disciplinary harm at issue, O'Bryant's retaliation claim fails.

O'Bryant v. Finch, 637 F.3d at 1215-16.  Thus, because Plaintiff was found guilty of the violations charged in the disciplinary reports, he cannot bring a claim for retaliation because it is concluded that Plaintiff would have been disciplined anyway because the independent disciplinary hearing panels concluded he committed the charged conduct.  Plaintiff's claims for retaliation should be dismissed.

## 2.    Access to Court claims

To the degree Plaintiff's complaint alleged that some of his legal documents were destroyed by Defendants Bence, Covan, Sims, and Johnson and should be construed as a claim for the denial of access to the Court, Defendants seek dismissal of such claims as insufficient.  Doc. 24 at 12.  Such a claim requires that Plaintiff allege "actual injury" in that a habeas petition or civil rights action with merit was dismissed as a result.  Lewis v. Casey, 518 U.S. 343, 350, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996);[7]

---

[7]  In Lewis, the Court announced a three-part test for determining whether a denial of access to the courts has, in fact, caused actual injury: (1) the action must involve an attack to the prisoner's sentence, directly or collaterally, or challenge the conditions of his confinement; (2) the prisoner must show the claim to which he was impeded was not frivolous; and (3) the conduct complained of must have impeded the inmate's capability to file the nonfrivolous action challenging his sentence or the conditions of his confinement.  Id. at 1281-83.

Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998).  Plaintiff has not alleged that

the conduct complained of frustrated or impeded his effort to pursue a nonfrivolous legal

claim.  *Id.*, at 352-54, 116 S. Ct. at 2181.  Moreover, Plaintiff's response to the motion to

dismiss demonstrates Plaintiff's agreement that he did not suffer a First Amendment

access to the courts violation.  Doc. 30 at 3.  Thus, because Plaintiff did not allege that

he was hindered in his access to the courts, Defendants' motion to dismiss Plaintiff's

First Amendment claims, doc. 24 at 12, should be granted.

**3.      Loss of Property claims**

Defendants contend that Plaintiff's claims brought pursuant to the Fifth

Amendment should be dismissed because "the Fifth Amendment due process clause

only applies to federal actors not state actors."  Doc. 24 at 12-13.  Defendants rely on

McCall v. Dep't of Human Res., 176 F.Supp.2d 1355, 1363 (M.D. Ga. 2001), in seeking

dismissal of Plaintiff's Fifth Amendment claims.  In McCall, the court noted that "it is

elementary constitutional law that the Due Process Clause of the Fifth Amendment

applies only to conduct committed by officials of the federal government; it does not

apply to state actors."  176 F.Supp.2d at 1363 (citing Riley v. Camp, 130 F.3d 958, 972

n.19 (11th Cir. 1997) (Tjoflat, J., dissenting from the denial of rehearing en banc).

Although the first ten Amendments of the Constitution (commonly referred to as

the Bill of Rights), "originally applied only to the Federal Government," the Fourteenth

Amendment which was adopted following "the Civil War fundamentally altered our

country's federal system."  McDonald v. City of Chicago, 561 U.S. 742, 754, 130 S.Ct.

3020, 3028 (2010) (holding that the Second Amendment right to keep and bear arms "is

fully applicable to the States.").  Now, it has long been established that the protections

of the Bill of Rights "are all to be enforced against the States under the Fourteenth

Amendment according to the same standards that protect those personal rights against

federal encroachment."  McDonald, 561 U.S. at 765, 130 S.Ct. at 3035 (citing to Malloy

v. Hogan, 378 U.S. 1, 10, 84 S.Ct. 1489 (1964) (other citations omitted)).  There can be

no dispute that the Due Process Clause of the Fourteenth Amendment provides a

constitutional basis for protecting the Fifth Amendment rights of citizens from those

acting with authority from the State.  Rymer v. Douglas Cnty., 764 F.2d 796, 800 (11th

Cir. 1985) (stating that the Fifth Amendment's "takings" "clause is made applicable to

the states through the due process clause of the Fourteenth Amendment.") (citing

Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160, 101 S.Ct. 446, 450,

66 L.Ed.2d 358 (1980)).

Notwithstanding Defendants' argument, it is clear that Plaintiff does not have a

viable claim for the loss of property.  Both the Fifth Amendment and Section 1 of the

Fourteenth Amendment provide that no person shall be deprived of "life, liberty, or

property, without due process of law."  Plaintiff's allegations assert that he had property

taken or destroyed by Defendant Bence (February 1, 2013) and by Defendants Covan

and Sims (May 25, 2013).  Plaintiff also alleged that several times he was "placed on

strip" and had his property taken and inventoried by Defendants Carr and Moore (¶44),

Defendants Denmon and Burt (¶56), and Defendant Dubose (¶58).  Plaintiff claimed

that when his property was returned, several items were missing or broken.  It is clear

that a prisoner may not seek relief through a § 1983 action to recover for the loss of

property.  If personal property of an inmate was taken and not returned because of a

defendant's negligence, there can be no finding of an unconstitutional deprivation of

property.  Daniels v. Williams, 474 U.S. 327 , 106 S. Ct. 662, 88 L. Ed.2d 662 (1986).

Even if the deprivation of property was intentional,[8] Plaintiff's claims are still foreclosed

by clearly established law.

Parratt v. Taylor, 451 U.S. 527, 541-44, 101 S. Ct. 1908, 1916-17, 68 L. Ed. 2d

420 (1981), "and its progeny hold that a deprivation of liberty or property is not

cognizable under Section 1983 when a state's post-deprivation remedies are adequate

to protect a victim's procedural due process rights."[9]  Wood v. Ostrander, 879 F.2d 583,

588 (9th Cir. 1989) (citing Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L.

Ed. 2d 393 (1984)).  In Hudson, the Court held that:

> . . . an unauthorized intentional deprivation of property by a state
> employee does not constitute a violation of the procedural requirements of
> the Due Process Clause of the Fourteenth Amendment if a meaningful
> postdeprivation remedy for the loss is available.  For intentional, as for
> negligent deprivations of property by state employees, the state's action is
> not complete until and unless it provides or refuses to provide a suitable
> postdeprivation remedy.

Hudson, 468 U.S. at 533, 104 S. Ct. at 3204 (footnote omitted).  Post-deprivation

procedures satisfy due process for unauthorized deprivations by state actors, whether

intentional or negligent, because the state cannot know in advance of the deprivation

and therefore cannot provide pre-deprivation process.  Id., at 534, 104 S. Ct. at 3204.

---

[8] Plaintiff never alleges that a particular Defendant intentionally took his property
and did not return it.  Most of the allegations allege only that property was inventoried by
certain Defendants and then when returned, some property was missing or broken.
That does not clearly allege that the Defendant who inventoried the property took it or
destroyed it or did so intentionally.

[9] This aspect of Parratt was not overruled by Daniels v. Williams, 474 U.S. 327
(1986).

The State of Florida has waived its sovereign immunity in tort actions for the negligent or wrongful acts of employees causing injury or loss of property.  Fla. Stat. § 768.28(1).  The existence of § 768.28 provides Plaintiff with a meaningful, post-deprivation remedy to challenge the loss of property.  Weaver, 294 F. App'x at 533.  Plaintiff cannot state a plausible claim against Defendants Bence, Covan, Sims, Carr, Moore, Denmon, Burt, or Dubose for the loss or destruction of Plaintiff's property.  *See* Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) (noting that retention of personal property is not a viable due process claim under Hudson "if a meaningful post-deprivation remedy for the loss is available.");  Taylor v. McSwain, 335 F. App'x 32, 34 (11th Cir. 2009) (holding that "a state employee's unauthorized intentional deprivation of an inmate's property does not violate due process under the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.").  The property claims brought under the Fifth and Fourteenth Amendments should be dismissed for failure to state a claim.

Plaintiff also attempted to state a claim under Article I, Section 9 of the Florida Constitution.  That provision is the same as the due process provisions of the Fifth and Fourteenth Amendments, that "[n]o person shall be deprived of life, liberty or property without due process of law."  Art. I, § 9, Fla. Const.  To the degree Plaintiff may be able to assert such a claim, it should nevertheless be dismissed because Plaintiff has a process available to him through § 768.28 in which to seek payment for the loss of his property.  Until the process has concluded, Plaintiff's claim has not ripened.[10]

---

[10] Moreover, even if Plaintiff could demonstrate a protected property interest and a violation of his state constitutional right, he might be entitled to declaratory or injunctive relief, but not monetary reimbursement.  Bradsheer v. Fla. Dep't of Highway

**4.    Sixth Amendment claim**

Plaintiff asserted a Sixth Amendment claim, doc. 8 at 16, but does not provide any indication of which facts demonstrate a Sixth Amendment violation.  The Sixth Amendment generally provides that an accused shall have the right to a speedy, public trial by an impartial jury; to be informed of the nature of the accusation brought against him; the right to confront and cross-examine witnesses, and the right to the assistance of counsel in his defense.  Those rights concern criminal trials, not prison disciplinary proceedings.  Dansby v. McKinnes, No. 2:14cv072, 2014 WL 4274335, at *6 (M.D. Ala. Aug. 28, 2014) (citing Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (stating "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); Henderson v. United States Parole Comm'n, 13 F .3d 1073, 1078 (7th Cir.), cert. denied 513 U.S. 926 (1994) (noting that "a prison disciplinary proceeding is not a criminal prosecution" and finding that prisoners "do not possess Sixth Amendment rights to confront and cross-examine witnesses.") (other citations omitted)).  Plaintiff does not allege any facts which support a sixth Amendment claim and the motion to dismiss should be granted.

**4.    Eighth Amendment Denial of Food claims**

Plaintiff alleged that on May 21, 2013, Defendant Sims refused to feed Plaintiff his breakfast.  He also claimed that several times, his food tray was thrown into his cell or onto the floor.  It is true that the State has a duty required by the Eighth Amendment

Safety and Motor Vehicles, 20 So.3d 915, 921 (Fla. 1st DCA 2009) (stating that state law establishes the property interest) (citing Garcia v. Reyes, 697 So.2d 549, 549-50 (Fla. 4th DCA 1997); Fernez v. Calabrese, 760 So.2d 1144, 1146 (Fla. 5th DCA 2000)).

to "ensure that inmates receive adequate food, clothing, shelter, and medical care."

Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Yet

the denial of one meal is not a constitutional violation.  Surles v. Cater, No. Cv513-116,

2014 WL 5574748, at *3 (S.D. Ga. Oct. 30, 2014) (holding that missing one morning

meal on one occasion was insufficient to sustain an Eighth Amendment claim); *see also*

Gardner v. Beale, 998 F.2d 1008 (4th Cir. 1993) (Table) (providing prisoner with only

two meals per day with 18 hours between dinner and brunch for 48 days was properly

dismissed and insufficient under Eighth Amendment); Green v. Ferrell, 801 F.2d 765,

770–71 (5th Cir.1986) (setting aside magistrate's order that jail provide three meals per

day, noting that two meals served per day at the jail was nutritionally adequate and

cause no medical problems); Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998)

(finding it "doubtful" that prisoner missing fifty meals in five months "was denied

anything close to a minimal measure of life's necessities," and commenting that

"[m]issing a mere one out of every nine meals is hardly more than that missed by many

working citizens over the same period."); Berry v. Brady, 192 F.3d 504, 506–08 (5th Cir.

1999) (affirming dismissal of Eighth Amendment claims for missing eight meals over

seven months).  Plaintiff alleged that Defendant Sims denied Plaintiff only one meal.

Particularly in light of the fact that Plaintiff also alleged he was on a hunger strike

between May 23, 2013, and at least, June 27, 2013, this claim is insufficient.  The

claims against numerous Defendants for throwing Plaintiff's food trays are also

insufficient because Plaintiff alleges no harm from those events.  It does not appear that

Plaintiff was unable to eat from the trays or suffered any constitutional injury.

To the degree Plaintiff also claimed that between March 16, 2013, and March 19, 2013, he was denied eleven straight meals, doc. 8 at 6-7, Plaintiff does not allege that any Defendant was responsible for the denial of those meals, nor does he allege any harm.  Thus, this claim is insufficient and the motion to dismiss the Eighth Amendment claims concerning Plaintiff's meals and food trays should be granted.

**5.     Other Eighth Amendment claims**

Plaintiff claimed that various Defendants tried to twist his wrists or fingers, push him over the toilet and into the corner of his bunk, or "physically abused" him in some other, unspecified way.  The Eighth Amendment forbids cruel and unusual punishment. Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).  "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Id.* (other citations omitted).  A claim that prison officials unnecessarily used excessive physical force on a prisoner falls within the Cruel and Unusual Punishments Clause.  The core judicial inquiry for this claim is the standard set forth in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986):  "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) (quoting Whitley, at 320-21, 106 S.Ct. at 1085).  Analysis of an excessive force claim considers "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' "  Hudson, 503 U.S. at 7; *see also* Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996).  An "absence of

serious injury" must also be considered.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, John v. Johnson, 414 U.S. 1033 (1973) (quoted in Hudson, 503 U.S. at 9, 112 S.Ct. at 1000); *see also* Gilmere v. City of Atlanta, 774 F.2d 1495, 1500 (11th Cir. 1985).  The absence of serious injury does not *necessarily* preclude a claim, yet the "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' "  Whitley, 475 U.S. at 327, 106 S.Ct. at 1088 (other citations omitted) (quoted in Hudson, 503 U.S. at 9-10, 112 S.Ct. at 1000).  Here, Plaintiff does not allege any injury, much less *de minimis* injury.  Accepting Plaintiff's allegations as true, the harassment alleged by Plaintiff is unprofessional for correctional officers, but it is not unconstitutional.  These Eighth Amendment claims brought against Defendants Moore, Carr, and Bence should be dismissed.

Plaintiff also alleged an Eighth Amendment claim against Defendant Beem for requiring Plaintiff to remain in a cell contaminated with urine and feces after the toilet allegedly backed up and flooded the cell.  Doc. 8 at ¶30.  Plaintiff contends that Defendant Beem removed his cellmate, but left Plaintiff in the cell from March 27, 2013, through March 30, 2013.  Plaintiff claimed Defendant Beem cut the water off to the cell, and "made no effort to decontaminate the cell or move Plaintiff out [of] the cell."  *Id.*

"[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time

fails to provide for his basic human needs--e.g., food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment. . . ."  Helling v. McKinney, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993), *quoting* DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989). To prevail on an Eighth Amendment claim, Plaintiff must prove a (1) condition of confinement that inflicted unnecessary pain or suffering (the objective component), (2) deliberate indifference to that condition (the subjective component), and (3) causation. LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994) (citations omitted).

It is unclear whether Plaintiff was provided with the necessary items to clean his cell after the plumbing problem and refused to do so.  In that situation, it is irrelevant that a correctional officer would not clean Plaintiff's cell.  It is also possible that the cell was flooded due to Plaintiff's actions which could explain the removal of Plaintiff's cellmate from the area, but requiring Plaintiff to remain.  It is unclear whether Plaintiff was still provided clean drinking water.  Those facts are important in deciding whether or not Plaintiff suffered an Eighth Amendment violation.  Nevertheless, giving Plaintiff the benefit of the doubt, he alleged that Defendant Beem "made no effort to decontaminate the cell" which could be interpreted to mean that Defendant Beem took no effort to provide Plaintiff with the means to clean and decontaminate the cell. Plaintiff was allegedly left in an unsanitary cell for three days.  Plaintiff's response points to cases which have found Eighth Amendment violations in similar situations.  Doc. 30 at 4-6.  Other cases have found such conditions insufficient.  *See* Smith v. Copeland, 87

F.3d 265, 268–69 (8th Cir. 1996) (holding that overflowed toilet in cell for 4 days was

not unconstitutional) (cited in Joe v. Nelson, No. 5:14cv184, 2014 WL 2930856, at *2

(M.D. Ga. June 27, 2014) (finding Plaintiff did not demonstrate a viable claim

concerning the unsanitary conditions of his cell and dismissing claims sua sponte).

Defendants did not address this claim in the motion to dismiss.  Thus, the motion should

be denied as to Plaintiff's Eighth Amendment claim against Defendant Beem.

**6.     Verbal Harassment claims**

Plaintiff contends that Defendants Carr and Moore threatened him, used racial

slurs and verbally harassed him in a sexual manner.  ¶38.  In general, courts have held

that verbal harassment, abuse, or taunting is not sufficient to state a constitutional

deprivation under 42 U.S.C. § 1983.  Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th

Cir. 1989) (noting that verbal taunts, alone, are insufficient to state a constitutional

violation); Hernandez v. Florida Dep't of Corr., 281 F. Appx. 862, 866 (11th Cir. 2008)

(holding that plaintiff's allegations of verbal abuse and threats by prison officials did not

state a constitutional claim because the defendants never carried out the threats, and

"verbal abuse alone is insufficient to state a constitutional claim"); *see also* Collins v.

Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (holding that the sheriff's laughing at inmate

and threatening to hang him did not violate the Constitution); Keenan v. Hall, 83 F.3d

1083, 1092 (9th Cir. 1996) (reiterating "verbal harassment generally does not violate the

Eighth Amendment."); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985)(holding

that "[v]erbal threats do not constitute a constitutional violation."); McFadden v. Lucas,

713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983) (holding that threatening

language and gestures of a corrections officer do not generally violate an inmate's

Eighth Amendment rights).  Again, such actions are not to be condoned, but are not

unconstitutional.  The motion to dismiss these claims should be granted.

## 7.   Medical Care claims

Plaintiff has attempted to assert two separate claims against separate

Defendants for the denial of medical care.  First, Plaintiff complained that when he tried

to get help from the medical station for pain and numbness in his left hand and arm,

Defendant Hawkins (a nurse) refused to evaluate Plaintiff and said he would note in

Plaintiff's medical file "that nothing was wrong with Plaintiff."  Doc. 8, ¶42.  Plaintiff also

claimed that when chemical agents were used against Plaintiff, the effects were

exacerbated because on an unspecified date, Defendant Nichols, "without a medical

probable cause, terminated Plaintiff's high blood pressure and asthma treatment . . . ."

*Id.* at ¶52.

Defendants seek dismissal of this claim arguing that Plaintiff has made a similar

allegation against this Defendant in another case before this Court, and because

Plaintiff did not allege "that he suffered any injury as a result" of the Defendant's alleged

actions.  Doc. 24 at 22-23.

The companion case intended to be cited by Defendants should have been case

number 4:14cv313-MW/CAS.[11]  Plaintiff brought a claim in that case concerning his

medical care, and alleged that Defendant Nichols wrongfully terminated his asthma

treatments and high blood pressure medications in May of 2011.  *See* doc. 7 of that

_____

[11] Defendants listed case number 3:14cv313, which is incorrect.  Doc. 24 at 22.

case.  Plaintiff has an avenue in which to litigate his claim against Defendant Nichols.[12]
The claim raised in this case against Defendant Nichols should be dismissed as
duplicative.

Defendants do not address Plaintiff's claim concerning the alleged refusal of
Defendant Hawkins to examine and treat Plaintiff on May 31, 2013, for injury and pain in
his left hand and arm.  *See* doc. 8 at 10 of this case.  That is a separate claim and may
proceed.  It is noted, however, that it is unrelated to the claim concerning Plaintiff's
contaminated cell.  If multiple unrelated claims survived the motion to dismiss, it would
be recommended that Plaintiff be required to decide *which* surviving claim he will
continue in this case and submit and amended complaint.  That is unnecessary here.

## 8.   Disciplinary Report claims

Defendants seek dismissal of all claims related to the issuance of disciplinary
reports against Plaintiff.  Doc. 24.  Defendants point out that as a result of the
disciplinary reports, Plaintiff was placed in disciplinary confinement.  Doc. 24 at 25.
Plaintiff did not lose gain time credits.  *Id.*

In Sandin v. Conner, 515 U.S. 472, 484-86, 115 S.Ct. 2293, 2300 (1995), the
Supreme Court held that an inmate is entitled to the due process protection outlined in
Wolff v. McDonnell[13] only if he can show the deprivation of a "protected liberty interest."

---

[12] A Report and Recommendation is pending in case number 4:14cv313,
recommending that Plaintiff be permitted to submit an "amended complaint limited only
to his Eighth Amendment claim against Defendant Nichols . . . ."  Doc. 32.

[13] Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held
that before an inmate could lose good-time credits, the Due Process Clause requires
that prisoners be given advance written notice of a charged disciplinary violation, a
written statement of factual findings, and the right to call witnesses and present
documentary evidence where such would not be unduly hazardous to institutional safety

Sandin "recognize[d] an exception to the 'loss of early release credit' requirement if the condition of confinement 'impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Sandin, 515 U.S. at 484 (quoted in Smith v. Deemer, No. 8:13–cv–2148–T–23TGW, 2013 WL 6332974 at *1 (M.D. Fla. Dec. 5, 2013). Ordinarily, placement in confinement alone is not sufficient to state a due process claim, see Rodgers v. Singletary, 142 F.3d 1252, 1253 (11 th Cir.1998) (per curiam) (finding that an inmate was not deprived of a constitutionally protected liberty interest when he was placed in administrative confinement as result of an allegedly false disciplinary report), nor is punishment in disciplinary confinement or segregation after a disciplinary hearing. See Sandin, 515 U.S. at 485, 115 S.Ct. at 2301 (noting that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."). Such events come within the ordinary incidents of prison life. Plaintiff has, thus, failed to state a claim upon which relief may be granted for due process claims associated with the issuance of allegedly "bogus" or false disciplinary reports. Plaintiff did not lose gain time and has not shown "an atypical and significant hardship in relation to the ordinary incidents of prison life" pursuant to Sandin. The motion to dismiss, doc. 24, the due process claims should be granted.

## 9.   Discrimination claims

Plaintiff made a conclusory claim for racial discrimination and prejudice. Doc. 8 at 16. Plaintiff has not, however, alleged that Defendants gave preferential treatment to

_____

or correctional goals.

another similarly situated class of inmates.  Because no facts were presented in the

complaint to support this claim, the motion to dismiss, doc. 24, should be granted.

**10.    Supervisory claims**

Plaintiff brings several claims against Defendants who occupy supervisory roles

in the Department of Corrections (Defendants Crews, Courtney, and Comerford.

However, Plaintiff does not allege that these persons were personally involved in the

events about which he claims.  Rather, Plaintiff's claims are based on the notion that as

supervisors, they are responsible for the actions of lower level employees or the

operations of a prison.  Such claims are insufficient.  A prison official cannot be named

as a Defendant in a civil rights case merely because he or she has supervisory authority

over others.  Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).  The doctrine

of respondeat superior or vicarious liability does not provide a basis for recovery under

§ l983.  Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992) (citing Monell v. Dep't

of Soc. Srvcs, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *see also* Collins

v. City of Harker Heights, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992);

Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

Naming as Defendants those individuals who are merely responsible for the safety of

inmates, in general, or even the safety of the inmates at a particular institution, without

more, does not state a viable claim for relief.  Although personal participation is not

specifically required for liability under § l983, there must be some causal connection

between each defendant named and the injury allegedly sustained.  Swint v. City of

Wadley, 51 F.3d 988, 999 (11th Cir. 1995) (citing Rivas v. Freeman, 940 F.2d 1491,

1495 (11th Cir. 1991), and Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)).

One cannot be held liable for the actions or omissions of others.  A supervisor can only "be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit."  Am. Fed'n of Labor v. City of Miami, 637 F.3d 1178, 1190 (11th Cir. 2011).  Plaintiff does not allege any such facts as to Defendants Crews, Comerford, or Courtney.  Thus, the motion to dismiss, doc. 24, should be granted as to those Defendants.

## 11.    Failure to State a Claim

Plaintiff alleged that he was "placed on strip" three times.  Plaintiff claims Defendant Suttles placed him on strip for four days beginning on May 25, 2013.  Doc. 8, ¶39.  In his response, Plaintiff also claims Defendants Infinger and Lee placed him on strip for three days, and Defendants Infinger and Jackson placed him on strip for three days, ¶58.  Doc. 30 at 10.

It is also worth clarifying that "[s]trip is also known as property restriction."  Thomas v. Rodgers, No. 3:13cv1052, 2013 WL 6017327, at *1 (M.D. Fla. Nov. 13, 2013) (noting inmate's allegation that "State and personal property are removed from the cell for 72 hours.").  Plaintiff alleged that all of his property was removed and he was left "with nothing" but a pair of boxer shorts and a "rusted, watered down steel bunk" bed.  Doc. 8, ¶39.  Plaintiff complaint suggests that every day items such as his hair brush and tooth brush were removed as well.  Id. at ¶56.

To the degree Plaintiff intended to present this claim as a Fourth Amendment violation, it is insufficient.  By virtue of their incarceration, inmates have some reduced

constitutional rights and the loss of many privileges and rights.  *See* Sandin, 515 U.S. at 485, 115 S.Ct. at 2301.  For example, inmates have diminished expectations of privacy in their prison cells, and searches are permissible, including strip searches.  *See* Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861, 1184 (1979); Hudson v. Palmer, 468 U.S. 517, 526 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (holding that prisoners have no subjective expectation of privacy in his prison cell and "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); *see also* O'Connor v. Carnahan, No. 3:09cv224, 2012 WL 2201522, at *8 (N.D. Fla. Mar. 27, 2012) (stating that "Hudson precludes Fourth Amendment challenges to prison cell searches and seizures taken for any reason, whether reasonable or not").  The deprivation of Plaintiff's property for approximately 72 hours is not unconstitutional under the Fourth Amendment claim.

The Eighth Amendment[14] governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Although the Amendment does not require comfortable prisons, it prohibits inhumane ones.  *Id.*  The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278,

---

[14] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation."  Thomas v. Bryant, 614 F.3d 1288, 1303-04 (11th Cir. 2010).  Plaintiff's complaint raises claims concerning all three, the conditions of confinement, the use of unnecessary and excessive force claim, and the deliberate indifference to Plaintiff's medical needs.

1289 (11th Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter,

sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d 1495, 1511

(11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452 F.App'x 848, 850-851

(11th Cir. 2011)).  "[T]o make out a claim for an unconstitutional condition of

confinement, 'extreme deprivations' are required . . . ."  Thomas v. Bryant  614 F.3d

1288, 1304, 1306-07 (11th Cir. 2010) (citing Hudson v. McMillian, 503 U.S. 1, 9, 112

S.Ct. 995, 117 L.Ed.2d 156 (1992)).

In Thomas v. Rodgers, the prisoner alleged that he had been subjected to cruel

and unusual punishment in violation of the Eighth Amendment when he was placed on

strip one time.  2013 WL 6017327, at *1.  Noting that Plaintiff did not allege how cold the

temperature was in his cell, that he suffered any injury from his 36-hour exposure to

cold temperatures, that the defendants knew of a risk of serious harm to plaintiff, or that

he ever informed the defendants that he was uncomfortably cold, the Middle District of

Florida concluded that the plaintiff had not alleged sufficient facts to support an Eighth

Amendment claim.  Id. at *4.  Here, Plaintiff has also not alleged any injury as a result of

his placement on strip other than the alleged loss or destruction of some property.  As

Plaintiff was on strip in May and June, it is not plausible that he was in freezing

conditions without adequate warm clothing.[15]  Furthermore, Plaintiff's allegations

---

[15] Courts have been troubled by prison officials' intentionally subjecting prisoners
to extreme cold.  See Chandler v. Crosby, 379 F.3d at 1290, n.22 (citing to Palmer v.
Johnson, 193 F.3d 346, 349 (5th Cir. 1999); Mitchell v. Maynard, 80 F.3d 1433, 1443
(10th Cir. 1996); Del Raine v. Williford, 32 F.3d 1024, 1035–36 (7th Cir. 1994);
Henderson v. DeRobertis, 940 F.2d 1055, 1060 (7th Cir. 1991); Corselli v. Coughlin,
842 F.2d 23, 27 (2d Cir. 1988); Lewis v. Lane, 816 F.2d 1165, 1171 (7th Cir. 1987); see
also Dixon v. Godinez, 114 F.3d 640, 641 (7th Cir. 1997) (reversing district court's grant
of summary judgment on claim concerning extreme cold in prison cell).

indicate that Plaintiff was placed on strip in conjunction with the issuance of disciplinary reports.  Thus, these are not claims based on a malicious or sadistic desire to cause Plaintiff harm but as part of discipline.

Plaintiff's case is also similar to claims raised in Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991).  There the plaintiff alleged that he was subject to following conditions of restrictive confinement which he claimed "violated the Eighth Amendment proscription of cruel and unusual punishment."  Plaintiff alleged:

> confinement in a cold cell with no clothes except undershorts and with a plastic-covered mattress without bedding; filth on the cell's floor and walls; deprivation of toilet paper for three days; deprivation of running water for two days; lack of soap, toothbrush, toothpaste, and linen; and the earlier occupancy of the cell by an inmate afflicted with an HIV virus. The averments of a cold cell were supplemented by specifics: that the temperature was as low as 60 degrees, that it was "ice cold", that plaintiff slept on the floor and on occasion huddled with a roommate, sleeping between two mattresses.

Chandler, 926 F.2d at 1063.  The district court found that the defendants enjoyed qualified immunity on the Eighth Amendment claim, Id. at 1064, but the Eleventh Circuit reversed, citing a number of supporting cases from other circuits and the Supreme Court's decision in Rhodes v. Chapman.  Id. at 1064-65.  The Court "conclude[d] from [that] body of caselaw that plaintiff [was] entitled to have the trier of fact determine whether the conditions of his administrative confinement, principally with regard to the cell temperature and the provision of hygiene items, violated the minimal standards required by the Eighth Amendment."  Id. at 1065.  Plaintiff has not pointed to sufficient deprivations which reveal he was denied "the minimal civilized measure of life's necessities" and, thus, he has not sufficiently alleged an Eighth Amendment violation for

the three times he was placed on strip.  The motion to dismiss this claim should be granted.

## 12.    Immunity and the § 1997e(e) Bar

Defendants[16] removed this case from state court and, thus, have waived any claim to Eleventh Amendment immunity.  Lapides v. Board of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).  Nevertheless, Defendants assert sovereign immunity as a defense to Plaintiff's claims.  Doc. 24 at 36-37.  Sovereign immunity is a divisible concept and is not waived by removal to federal court.  Stroud v. McIntosh, 722 F.3d 1294, 1300-01 (11th Cir. 2013)[17] (adopting reasoning of Third and Fifth Circuits "[t]hat underlying immunity from liability is unaffected by the state's voluntary invocation of the federal forum.")(citing Lombardo, 540 F.3d 190; Meyers ex rel. Benzing v. Texas, 410 F.3d 236 (5th Cir. 2005), cert. denied sub nom. Texas v. Meyers, 550 U.S. 917, 127 S.Ct. 2126, 167 L.Ed.2d 862 (2007)).

---

[16] Plaintiff has asserted claims against the Defendants in both their official and individual capacities.  Doc. 8 at 5.

[17] The Court noted there was a split between circuits on this issue, deciding to agree with the "middle ground" approach of the Third and Fifth Circuits.  Three circuits (the First, Fourth, and the D.C. Circuit) hold "that a state did not waive sovereign immunity by removing a case" to federal court because "the state had not waived its immunity in its own courts."  Stroud, 722 F.3d at 300 (citing Bergemann v. R.I. Dep't of Envtl. Mgmt., 665 F.3d 336, 340-42 (1st Cir. 2011); Stewart v. North Carolina, 393 F.3d 484, 490 (4th Cir. 2005); Watters v. Washington Metro. Area Transit Auth., 295 F.3d 36, 42 n.13 (D.C. Cir. 2002), cert. denied 123 S.Ct. 1574 (2003)).  "On the other hand, three circuits (the Seventh, Ninth, and Tenth) read Lapides's broad reasoning to establish the general rule that a state's removal to federal court constitutes a waiver of immunity, regardless of what a state waived in its own courts."  Stroud, 722 F.3d at 300 (citing Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc., 653 F.3d 448, 461 (7th Cir. 2011); Embury v. King, 361 F.3d 562, 564 (9th Cir. 2004); Estes v. Wyo. Dep't of Transp., 302 F.3d 1200, 1204 (10th Cir. 2002)).

Sovereign immunity is a " 'fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which they retain today.' " N. Ins. Co. v. Chatham Cnty., 547 U.S. 189, 193, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006) (quoting Alden v. Maine, 527 U.S. 706, 731, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)).  Either "[a] state may waive its sovereign immunity, or congress can abrogate states' sovereign immunity to enforce the substantive provisions of the Fourteenth Amendment."  Stroud, 722 F.3d at 1298 (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)).  Furthermore, the doctrine of Ex parte Young allows an individual to sue a state where a plaintiff seeks "prospective injunctive relief to prevent a continuing violation of federal law."  Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (citing Ex parte Young, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

Here, neither Congress nor the State of Florida has waived sovereign immunity. Gamble v. Fla. Dep't of Health & Rehab. Serv., 779 F.2d 1509, 1513 (11th Cir. 1986). Furthermore, Plaintiff cannot proceed under Ex parte Young because Plaintiff is no longer at Santa Rosa Correctional Institution where the events at issue took place. Thus, Plaintiff's requests for injunctive and declaratory relief under § 1983 are moot. Clas v. Torres, 549 F.App'x 922, 923 (11th Cir. 2013) (citing Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (quoting Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir.1985) (stating that "[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the

inmate has been transferred.")).   Accordingly, Plaintiff's official capacity claims should be dismissed and only the individual capacity claims may proceed in this action.

Defendants have raised the bar of 1997e(e) as a bar to Plaintiff's request for monetary damages.   Doc. 24 at 38-41.   Because Plaintiff has not alleged physical injury as a result of the surviving constitutional claims, even if successful, Plaintiff's request for compensatory monetary damages must necessarily be limited to nominal damages as required by 42 U.S.C. § 1997e(e).   Harris v. Garner, 216 F.3d 970 (11th Cir. 2000)[18], *reinstating in part* 190 F.3d 1279 (11th Cir. 1999); Osterback v. Ingram, et al., No. 00-10558, 263 F.3d 169 (11th Cir. 2001) (Table).   The statute also precludes an award "of punitive damages in the absence of physical injury."   Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011).   Plaintiff's request for relief in this case must be limited to nominal damages.

**Conclusion**

Julie Jones should be automatically substituted for Defendant Crews pursuant to Fed. R. Civ. P. 25(d).   However, in light of the recommendation that Plaintiff's claims against that Defendant be dismissed, there is no need for substitution.   Plaintiff's claims against Defendants Coston and Hawkins should be dismissed because those Defendants have not been served with process as required by FED. R. CIV. P. 4(m), and 12(b)(5).   All First, Fourth, Fifth, Sixth, and Fourteenth Amendment claims should be dismissed, as should all Eighth Amendment claims with the exception of two claims: the

---

[18]  Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), *cert. denied*, 121 S. Ct. 2214 (2001).   The parts of the panel opinion relevant to this legal issue were reinstated.

motion to dismiss should be denied as to Plaintiff's Eighth Amendment claim against Defendant Beem concerning the contaminated cell and the Eighth Amendment claim against Defendant Hawkins for failing to provide medical care on May 31, 2013, for injury and pain in his left hand and arm.  Those two Defendants may be sued in their individual capacities only for nominal damages.

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, doc. 24, be **GRANTED** as to all claims and all Defendants with the exception of Plaintiff's Eighth Amendment claim against Defendant Beem and an Eighth Amendment claim against Defendant Hawkins, that the claims proceed against the Defendants in their individual capacities only, that Plaintiff's requests for declaratory and injunctive relief be stricken as moot due to his transfer, that the request for damages be limited to nominal damages pursuant to 42 U.S.C. § 1997e(e), and the case be **REMANDED** for further proceedings on the two surviving claims.

**IN CHAMBERS** at Tallahassee, Florida, on January 27, 2015.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**